UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. B. as conservator for JOHN DOE 1; C.C. as guardian for JANE DOE 1; JOHN DOE 2; and JANE DOE 2 on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIQUITA BROOKS-LASURE, in her official capacity as Administrator for the Centers for Medicare and Medicaid Services; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH; TOMAS ARAGON in his official capacity as Director of the California Department of Public Health; XAVIER BECERRA in his official capacity as Secretary of the U.S. Department of Health and Human Services; and DOES 1 through 30,<br><br>Defendants. | No. C 22-04501 WHA<br><br>**ORDER RE DISMISSAL** |

On November 10, 2022, CMS, CDPH, and the City and County of San Francisco entered into a settlement agreement regarding Laguna Honda Hospital. The settlement extended federal funding for Laguna Honda until November 2023 subject to Laguna Honda's compliance with a revised closure plan, which plan has yet to be finalized. While resident relocations remain paused, the settlement agreement states that Laguna Honda shall resume its responsibilities to "transfer and discharge" Laguna Honda residents under a revised closure plan starting on February 2, 2023. The settlement agreement states that this date for resuming resident relocations may be extended by CMS and that relocations may be paused altogether subject to Laguna Honda's compliance. The settlement agreement also contemplates

recertification of Laguna Honda under Medicare and Medicaid programs (Settlement and Sys. Improvement Agreement ¶¶ 7, 14, 18, Dkt. 103-1).

The procedural history of this action provides context for its current posture of assessing the settlement agreement's impact. Plaintiffs filed their complaint in early August 2022, which challenged the imposition of a closure and relocation plan with a mid-September deadline for relocating all Laguna Honda residents, pursuant to the expiration of federal funding. When Plaintiffs filed motions for class certification and preliminary injunction in early September, the relocation deadline and accompanying federal funding had been extended to mid-November. At the end of September, this district court entered requests for information regarding the circumstances of Laguna Honda residents that died after relocation, the status of the City and County's administrative appeal, and data regarding the capacity of skilled nursing facilities in and around San Francisco. In early October, this district court and the parties' lawyers conducted a site visit of Laguna Honda as outlined in a corresponding stipulation and order. A hearing was held on October 13, 2022, regarding the outstanding motions, and supplemental briefing on subject-matter jurisdiction was ordered. The day before the hearing, the parties had stipulated to a settlement in principle which paused relocations until February 2023 and extended federal funding to November 2023. After both motions and supplemental requests were fully briefed—with the exception of the circumstances of post-relocation deaths, which neither plaintiffs nor defendants have been able to answer—an order denying class certification for lack of subject-matter jurisdiction issued on November 9, 2023. That order also asked plaintiffs to show cause why this action should not be dismissed. As described above, the settlement was finalized on November 10, 2023. Plaintiffs subsequently withdrew their outstanding motion for preliminary injunction on January 4, 2023. A case management hearing was held on January 11, 2023.

At this juncture therefore, the issue that remains is whether the settlement affects our prior ruling that plaintiffs must first administratively exhaust their claims for subject-matter jurisdiction to exist. It does not.

2

Plaintiffs argue that the City and County exhausted administrative channels when it dismissed its DHHS appeal and waived all further appeals pursuant to the settlement agreement. There are two problems with this argument. *First*, Plaintiffs do not explain why settlement can satisfy exhaustion. Statutory language and analogous precedent suggest the contrary. 42 U.S.C. § 405(g) expressly states that a "final decision . . . made after a hearing" is a prerequisite to judicial review. *See Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 1858928, at *4 (N.D. Cal. Apr. 23, 2008) (explaining exhaustion framework for claims arising under the Medicare Act). A settlement that contains a voluntary declination to pursue and obtain such a decision does not satisfy that prerequisite. *Cf. Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 242 (6th Cir. 2021), *cert. granted*, 143 S. Ct. 81 (2022) (explaining the settlement "tradeoff" between relief and waiver of administrative remedy); *Hamilton v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 993 F. Supp. 884, 889 (S.D. Ala. 1996) (Judge Charles R. Butler Jr.) ("[T]o consider settlement tantamount to exhaustion would undermine the purposes of the exhaustion requirement . . . .").

*Second*, the fact that the City and County's administrative appeal was an adequate proxy for plaintiffs to exhaust administrative channels does not mean that it was their *only* option. The reason the City and County's appeal was an adequate proxy was because by challenging the decertification decision itself, that appeal necessarily enveloped any relocation plan as a result of that decertification: the success of such an appeal would have obviated *all* resident relocations at issue. The settlement simply means that the City and County's administrative appeal is no longer acting as a proxy. Although there is currently no relocation plan in effect, once a revised relocation plan is finalized, plaintiffs themselves can—and always could—appeal to CDPH a decision to relocate them under federal regulations. *See* 42 C.F.R. §§ 431.220(a)(2), 483.15(c)(1)(ii); *see also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000) (explaining that the channeling requirement of Section 405(h) applies to "claims that contest a sanction or remedy"). Until those channels are pursued in full, this district court lacks subject-matter jurisdiction.

3

In other words, plaintiffs have not demonstrated that administrative exhaustion would be futile such that the requirement should be waived. *See Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir. 1989). Plaintiffs have stated that while they believe "the determination to decertify Laguna was wrong (and that the facility is safe), Plaintiffs recognize that they do not have standing to contest that decision" (Reply Br. to Fed. Def.'s Opp. to Mot. Prelim. Inj. 2). Likewise, "Plaintiffs do not claim that they have a right to continued residence at Laguna Honda" (*id.* at 11). *See O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 785 (1980). The fact that the City and County is no longer pursuing administrative remedies regarding decertification and potential closure therefore has limited bearing on exhaustion for plaintiffs' desired relief, which is to ensure that Laguna Honda residents are able to be safely relocated. Plaintiffs' arguments regarding the unfairness and prudence of the need for relocations *at all* are thus inapposite, because they speak to decertification and potential closure. Plaintiffs have not explained why existing administrative channels would be unable to address their stated desired relief of ensuring safe relocations.

Moreover, it is worth noting that in addition to the availability of administrative review for individual relocations, plaintiffs remain able to sue Laguna Honda—via the City and County who owns it—for its implementation of any closure plan, including if it selected and relocated residents in a dangerous manner. Such a lawsuit may also address the City and County's efforts to secure federal funding, which include the City and County's apparent failure to maintain certification in the first instance, its subsequent efforts to challenge its decertification, and the settlement it agreed to. While the posture of this action means it is not the vehicle to litigate those issues at this time, plaintiffs remain free to initiate such a lawsuit. And ultimately, the City and County remains beholden to its electorate over how it manages a facility designed to care for our most vulnerable citizens.

\*     \*     \*

The remainder of plaintiffs' arguments do not relate to the settlement agreement, which is the material difference in fact cited by plaintiffs that forms the basis of their requested motion for reconsideration (Br. 10). Nevertheless, this order briefly addresses them. *First*, our prior

4

order did not rely on the facts that plaintiffs assert are disputed because those facts have no bearing on the conclusion that the administrative exhaustion requirement has not been met. *Second*, plaintiffs' arguments distinguishing state from federal defendants and Medicare from Medicaid residents were raised in prior briefing and considered. Restatement of arguments does not provide a basis to disturb our prior order's conclusion that for purposes of subject-matter jurisdiction, plaintiffs' claims either arise out of Medicare or are inextricably intertwined with such a claim.

For the foregoing reasons, leave for plaintiffs to file a motion for reconsideration is **DENIED**. Because the settlement does not disturb our prior order's reasoning on subject-matter jurisdiction, this civil action should be dismissed for lack of subject-matter jurisdiction, subject to the following.

Ordinarily we would enter final judgment, but at the hearing on January 11, 2023, plaintiffs asked for the option to amend their complaint. Plaintiffs may seek leave to amend their complaint and shall have until **NOON** on **FEBRUARY 9, 2023**, to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should explain how the amendments to the complaint cure the deficiencies identified herein, as well as any others raised in defendants' briefs. If such a motion is not filed by the deadline, this case will be closed.

**IT IS SO ORDERED.**

Dated: January 11, 2023.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE